## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TERRICA JENNINGS,

        *Plaintiff*,

    v.

DISTRICT OF COLUMBIA, *et al.*,

        *Defendants*.

No. 1:24-CV-00329 (ACR)

## DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

Defendants District of Columbia and M. Colleen Currie respectfully submit this motion

to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(6).  A memorandum of points

and authorities and a proposed order are attached.


Dated: August 13, 2025              Respectfully submitted,

                                     BRIAN L. SCHWALB
                                     Attorney General for the District of Columbia

                                     CHAD COPELAND
                                     Deputy Attorney General
                                     Civil Litigation Division

                                     */s/ Christina Okereke*
                                     CHRISTINA OKEREKE [219272]
                                     Chief, Civil Litigation Division Section II

                                     */s/ Danielle B. Rosenthal*
                                     DANIELLE B. ROSENTHAL [1035562]
                                     Assistant Attorney General
                                     400 6th Street NW
                                     Washington, D.C. 20001
                                     (202) 285-0463
                                     danielle.rosenthal@dc.gov

                                     *Counsel for Defendants*

## TABLE OF CONTENTS

TABLE OF CONTENTS

INTRODUCTION .......................................................................................................... 1

FACTS ........................................................................................................................ 2

STANDARD OF REVIEW ............................................................................................... 5

ARGUMENT ................................................................................................................ 5

I.      To the Extent that Plaintiff Improperly Repleads Title VII Clams Against Chief Judge
        Currie, in Contravention of the Court's June 5, 2025 Order, Those Claims Should Be
        Stricken or Dismissed With Prejudice (Counts I, III, V, VI)............................................ 5

II.     Plaintiff Fails to State a Hostile Work Environment Claim Under Title VII or the
        DCHRA (Counts I, II, III, and IV)...................................................................................... 6

        A.      Legal Standard ...................................................................................................... 6

        B.      Plaintiff Does Not Plausibly Allege a Hostile Work Environment Based on Race
                and Sex Because She Offers No Facts Sufficient to Show that Chief Judge Currie
                Held Animus Against Black Women (Counts I and II). ....................................... 7

        C.      Plaintiff Fails to Plausibly Allege That She Was Subject to Severe or Pervasive
                Harassment. ........................................................................................................... 9

III.    Plaintiff Fails to State Retaliation Claims Under Title VII or the DCHRA (Counts III &
        IV). .......................................................................................................................... 13

        A.      Plaintiff Fails to Plausibly Allege That Her Oppositional Activity in June 2021
                Was Statutorily Protected. .................................................................................. 14

        B.      Plaintiff Fails to Plausibly Allege that the Reassignment of Duties or Placement
                on Paid Administrative Leave Are Materially Adverse Acts. .............................. 15

        C.      Plaintiff Fails to Plausibly Allege a Causal Connection Between Her June 2021
                Complaints and the Interim General Counsel Salary Offer. ............................... 17

IV.     Plaintiff Fails to State Race and Sex Discrimination Claims Based on Unequal Pay Under
        the DCHRA or Title VII (Counts V & VI). ...................................................................... 19

CONCLUSION ............................................................................................................... 22

# TABLE OF AUTHORITIES

Page(s)

Cases

763 F. Supp. 3d 17 (D.D.C. 2025) ........................................................................... 15
Akosile v. Armed Forces Ret. Home,
   141 F. Supp. 3d 75 (D.D.C. 2015) ..................................................................... 12
Alfano v. Costello,
   294 F.3d 365 (2d Cir. 2002) ............................................................................... 9
Ashcroft v. Iqbal,
   556 U.S. 662 (2009) ...................................................................................... 5, 18
Ayissi-Etoh v. Fannie Mae,
   712 F.3d 572 (D.C. Cir. 2013) .......................................................................... 11
Baird v. Gotbaum,
   662 F.3d 1246 (D.C. Cir. 2011) ........................................................................ 11
Baker v. Potter,
   294 F. Supp. 2d 33 (D.D.C. 2003) .................................................................... 17
Baloch v. Kempthorne,
   550 F.3d 1191 (D.C. Cir. 2008) .......................................................................... 8
Bell Atl. Corp. v. Twombly,
   550 U.S. 554 (2007) ...................................................................................... 5, 18
Bell v. Gonzales,
   398 F. Supp. 2d 78 (D.D.C. 2005) .................................................................... 11
Bereston v. UHS of Del., Inc.,
   180 A.3d 95 (D.C. 2018) .................................................................................... 7
Bergbauer v. Mabus,
   934 F. Supp. 2d 55 (D.D.C. 2013) ...................................................................... 9
Bergin v. N. Clackamas Sch. Dist.,
   2005 WL 66069 (D. Or. Jan 12, 2005) ............................................................. 10
Boone v. MountainMade Found.,
   64 F. Supp. 3d 216 (D.D.C. 2014) .................................................................... 10
Bowie v. Gonzales,
   433 F. Supp. 2d 24 (D.D.C. 2006) .................................................................... 13
Broderick v. Donaldson,
   37 F.3d 1226 (D.D.C. 2006) ............................................................................. 14
Browning v. Clinton,
   292 F.3d. 235 (D.C. Cir. 2002) ........................................................................... 5
Bryant v. Brownlee,
   265 F. Supp. 2d 52 (D.D.C. 2003) ................................................................. 9, 10
Burlington Northern & Santa Fe Railroad. Co. v. White,
   548 U.S. 53 (2006) ........................................................................................... 15
Chambers v. District of Columbia,
   35 F.4th 870 (D.C. Cir. 2022) ........................................................................... 16
Clark Cnty. Sch. Dist. v. Breeden,

532 U.S. 268 (2001) ................................................................................ 14, 19

*Clemmons v. Acad. for Educ. Dev.*,
107 F. Supp. 3d 100 (D.D.C. 2015) ......................................................... 10

*DeLaurencio v. Brooklyn Children's Ctr.*,
111 F. Supp. 3d 239 (E.D.N.Y. 2015) ....................................................... 8

*Doe #1 v. Am. Fed'n of Gov't Emps.*,
2023 WL 22059 (D.D.C. Jan. 3, 2023) ...................................................... 6

*Dudley v. Wash. Metro. Area Transit Auth.*,
924 F. Supp. 2d 141 (D.D.C. 2013) ......................................................... 10

*E.E.O.C. v. Port Auth. of N.Y. & N.J.*,
768 F.3d 247 (2d Cir. 2014) ..................................................................... 21

*Faison v. Vance Cooks*,
896 F. Supp. 2d 37 (D.D.C. 2012) ........................................................... 11

*Faragher v. City of Boca Raton*,
524 U.S. 775 (1998) .............................................................................. 7, 10

*Forkkio v. Powell*,
306 F.3d 1127 (D.C. Cir. 2002) ............................................................... 16

*George Wash. Univ. v. Violand*,
940 A.2d 965 (D.C. 2009) ........................................................................ 20

*George v. Leavitt*,
407 F.3d 405 (D.C. Cir. 2005) ....................................................... 9, 12, 14

*Glenn v. Williams*,
2006 WL 401816 (D.D.C. Feb. 21, 2006) ................................................ 18

*Globus v. Skinner*,
721 F. Supp. 329 (D.D.C. 1989) .............................................................. 14

*Goodrich v. Int'l Bhd. of Elec. Workers, AFL-CIO*,
815 F.2d 1519 (D.C. Cir. 1987) ............................................................... 22

*Grosdidier v. Chairman, Broad. Bd. of Governors*,
774 F. Supp. 2d 76 (D.D.C. 2011) ........................................................... 14

*Hardy v. Sullivan*,
889 F.2d 291 (D.C. Cir. 1989) ................................................................. 21

*Harris v. Forklift Sys., Inc.*,
510 U.S. 17 (1993) ................................................................................ 6, 7

*Hockaday v. Wash. Metro. Area Transit Auth.*,
2023 WL 3844388 (D.D.C. June 6, 2023) ................................................ 16

*Hornsby v. Watt*,
217 F. Supp. 3d 58 (D.D.C. 2016) ........................................................... 17

*Hornsby v. Watt*,
2017 WL 11687516 (D.C. Cir. Nov. 14, 2017) ......................................... 16

*Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Emps. of the Libr. of Cong., Inc. v. Billington*,
737 F.3d 767 (D.C. Cir. 2013) ................................................................. 13

*Johnson v. DeJoy*,
2024 WL 4215557 (D.D.C. Sept. 17, 2024) ........................................ 17, 18

*Johnson v. District of Columbia*,
947 F. Supp. 2d 123 (D.D.C. 2013) ......................................................... 22

*Johnson v. Wash. Metro. Area Transit Auth.*,
   2022 WL 4547527 (D.D.C. Sept. 29, 2022) ................................................ 21, 22

*Jones v. Castro*,
   168 F. Supp. 3d 169 (D.D.C. 2016) ................................................................... 17

*Kortan v. Cal. Youth Auth.*,
   217 F.3d 1104 (9th Cir. 2000) ........................................................................... 12

*Kowal v. MCI Commc'ns Corp.*,
   16 F.3d 1271 (D.C. Cir. 1994) ............................................................................. 5

*Latture v. Priority Life Care, LLC*,
   2025 WL 947476 (D.D.C. Mar. 28, 2025) ........................................................ 12

*McCain v. Bazron*,
   2023 WL 3790686 (D.D.C. June 2, 2023) ........................................................... 7

*McGrath v. Clinton*,
   666 F.3d 1377 (D.C. Cir. 2012) ........................................................................ 14

*Mgmt. Ass'n-Ret. Corp.*,
   898 F. Supp. 2d 84 (D.D.C. 2012) ...................................................................... 6

*Moore-Davis v. U.S. Dep't. of the Navy*,
   2023 WL 6276637 (D.D.C. Sept. 26, 2023) ..................................................... 20

*Moss v. Hayden*,
   2020 WL 4001467 (D.D.C. July 15, 2020) ...................................................... 16

McClure v. Blinken,
   No. 22-cv-654 (D.D.C. July 13, 2023) .............................................................. 10

*Muldrow v. City of St. Louis*,
   601 U.S. 346 (2024) .......................................................................................... 16

*Mungin v. Katten Muchin & Zavis*,
   116 F.3d 1549 (D.C. Cir. 1997) ........................................................................ 16

*Nagi v. Chao*,
   2018 WL 4680272 (D.D.C. Sept. 28, 2018) ..................................................... 12

*Nat'l R.R. Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002) .......................................................................................... 11

*Newman v. Amazon.com, Inc.*,
   2022 WL 971297 (D.D.C. Mar. 31, 2022) ....................................................... 20

*Phillips v. Rubenstein*,
   2007 WL 9760157 (D.D.C. Oct. 29, 2007) ...................................................... 10

*Pierre v. Woods Servs., Inc.*,
   2021 WL 84068 (E.D. Pa. Jan. 11, 2021) ........................................................ 18

*Ramey v. Potomac Elec. Power Co.*,
   468 F. Supp. 2d 51 (D.D.C. 2006) .................................................................... 12

*Rattigan v. Gonzales*,
   503 F. Supp. 2d 56 (D.D.C. 2007) .................................................................... 11

*Reid v. Buttigieg*,
   2023 WL 2184549 (D.D.C. Feb. 23, 2023) ...................................................... 17

*Robinson v. Red Coats*, Inc.,
   31 F. Supp. 3d 201 (D.D.C. 2014) ...................................................................... 8

*Rosenson v. Bloomfield*,
   2025 WL 958254 (D.D.C. Mar. 31, 2025) ......................................................... 9

*Savignac v. Day*,
  539 F. Supp. 3d 107 (D.D.C. 2021) ............................................................. 21
*Savignac v. Day*,
  754 F. Supp. 3d 135 (D.D.C. 2024) ............................................................. 15
*Spence v. U.S. Dep't of Veterans*,
  109 F.4th 531 (D.C. Cir. 2024) ............................................................. 13, 18
*Spence v. U.S. Dep't of Veterans Affs.*,
  2002 WL 3354726 (D.D.C. Aug. 12, 2022) ................................................ 18
*Stewart v. Evans*,
  275 F.3d 1126 (D.C. Cir. 2002) ................................................................. 12
*Taylor v. Solis*,
  571 F.3d 1313 (D.C. Cir. 2009) ........................................................... 17, 19
*Thomas v. Securiguard Inc.*,
  412 F. Supp. 3d 62 (D.D.C. 2019) ............................................................... 7
*Tolson v. Springer*,
  618 F. Supp. 2d 14 (D.D.C. 2009) ............................................................. 12
*Turner v. District of Columbia*,
  383 F. Supp. 2d 157 (D.D.C. 2005) ........................................................... 21
*Valles-Hall v. Ctr. for Nonprofit Advancement*,
  481 F. Supp. 2d 118 (D.D.C. 2007) ........................................................... 15
*Webster v. Braithwaite*,
  No. 20-5187, 2020 WL 10056382 (D.C. Cir. Nov. 20, 2020) .................... 17
*Webster v. Spencer*,
  2020 WL 2104231 (D.D.C. May 1, 2020) ................................................. 17
*Williams v. Wellness Med. Care, P.C.*,
  2013 WL 5420985 (S.D.N.Y. Sept. 27, 2013) ............................................. 8
*Woodruff v. Peters*,
  482 F.3d 521 (D.C. Cir. 2007) ................................................................. 17

Statutes

42 U.S.C. § 2000e–3(a) ................................................................................ 13
42 U.S.C. §§ 2000e ......................................................................................... 1
D.C. Code § 2-1401.01 ................................................................................... 1

Rules

Fed. R. Civ. P. 12(b)(6) ............................................................................ 1, 5

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TERRICA JENNINGS,<br><br>    *Plaintiff*,<br><br>  v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>    *Defendants*. | No. 1:24-CV-00329 (ACR) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

**INTRODUCTION**

Defendants District of Columbia (District) and M. Colleen Currie, Chief Administrative Law Judge of the District of Columbia Office of Administrative Hearings (OAH) (collectively, "Defendants"), respectfully move to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(6).  Plaintiff appears to bring the following claims: (1) hostile work environment claims based on race and gender under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e, *et seq*. (Count I), and the District of Columbia Human Right Act (DCHRA), D.C. Code § 2-1401.01, *et seq*. (Count II), as well as claims of a retaliatory hostile work environment under Title VII (Count III) and the DCHRA (Count IV); (2) retaliation claims based on discrete acts under Title VII (Count III) and the DCHRA (Count IV); (3) race discrimination claims based on allegedly unequal pay under Title VII and the DCHRA (Counts V); and (4) sex discrimination claims based on allegedly unequal pay under Title VII and the DCHRA (Count VI).

The Amended Complaint fails for several reasons.  *First*, to the extent that Plaintiff improperly repleads her Title VII claims against Chief Judge Currie, which the Court previously

dismissed and barred her from re-pleading, those claims should be stricken or dismissed with prejudice based on the Court's June 5, 2025, Order. *Second*, Plaintiff has failed to state claims for relief under Title VII or the DCHRA for a hostile work environment theory of liability based on race discrimination, sex discrimination, or retaliation (Counts I, II, III, and IV). *Third*, Plaintiff has failed to state claims for relief under Title VII or the DCHRA for retaliation based on discrete acts (Counts III & IV). *Finally,* Plaintiff has failed to plausibly state claims for relief of race and sex discrimination under Title VII or the DCHRA based on unequal pay (Counts V and VI). Accordingly, the Court should dismiss the Amended Complaint in full with prejudice.

## FACTS

Plaintiff Terrica Jennings, a Black Caribbean-American, was formerly employed with OAH as Deputy General Counsel beginning March 14, 2021. Am. Compl. ¶¶ 10, 12. Plaintiff alleges that when she began employment with OAH, she was "initially tasked with providing legal advice and support to OAH's General Counsel, Mr. Louis Neal," Chief Judge Currie, and "all other department managers and supervisors." *Id.* ¶ 13. She also "supervised [OAH's] Office of General Counsel's legal support staff, oversaw the appellate department, tracked legislation," and drafted legal documents. *Id.* Plaintiff claims that, while employed at OAH, she reported to Chief Judge Currie and Louis Neal. *Id.* ¶¶ 9, 23, 30. After teleworking full-time because of the COVID-19 pandemic, Plaintiff returned to working in the office in June 2021 and met with Chief Judge Currie for the first time in person. *Id.* ¶¶ 14–16.

Plaintiff claims that, during this meeting, Chief Judge Currie gossiped about "several Black and Black female employees" and "degraded [Plaintiff's] Black colleagues, using commonly derogatory African American stereotypes about work ethic, intelligence, and sexuality." *Id.* ¶¶ 17–18. Allegedly, Chief Judge Currie made comments to Plaintiff about various OAH colleagues—both men and women—describing certain colleagues in the following

manner:  extremely flirtatious, "old and useless," "not smart," "dumb," "unintelligent," "fast,"

"sneaky," and "full of attitude."  *Id*. ¶¶ 19, 23.   Plaintiff also claims that during this meeting,

Chief Judge Currie "reli[ed] on racist stereotypes about African American people," allegedly

describing an OAH clerk as "actually one of the smart ones" and who "had potential" and was

not "lazy" like the others.  *Id*. ¶ 24.   According to Plaintiff, she felt "incredibly uncomfortable"

that Defendant allegedly described other OAH employees in this manner, "especially since [Chief

Judge] Currie only described the Black paralegals and legal support staff" this way.  *Id*. ¶ 22.

Plaintiff alleges that, during this meeting, Chief Judge Currie also told Plaintiff that she

was "so articulate and well-spoken."  *Id*. ¶ 27.  Plaintiff claims that she "made it very clear" to

Chief Judge Currie that she was uncomfortable with her comments by telling her "[a]t the end of

the meeting . . . that she did not like the nature of the conversation and would prefer to stick to

work-related matters."  *Id.* ¶¶ 26, 29.  Plaintiff also alleges that she "informed her direct

supervisor, Mr. Neal, through email, about Ms. Currie's comments about the Black staff members"

and "immediately reported the matter to Mia Brown, OAH's Human Representative."  *Id.* ¶ 30.

Plaintiff claims that after she opposed Chief Judge Currie's "race and gender-based

insults," Chief Judge Currie subjected Plaintiff to a hostile work environment.  *Id*. ¶ 31.

Specifically, Plaintiff alleges that Defendant  Currie left Plaintiff off work emails and

assignments; failed to acknowledge or speak with Plaintiff in meetings; "perpetually gave

[Plaintiff] a negative attitude"; "castigated" and yelled at Plaintiff for asking OAH's Chief

Operating Officer (COO) about salary increases; asked the COO not to speak with Plaintiff about

work-related matters and to not provide Plaintiff a key to the storage closet; dismissed Plaintiff's

contributions in work meetings; assigned Plaintiff HR-related duties when Brown resigned in the

late summer of 2021; and assigned Plaintiff operational duties when the COO resigned, without

additional compensation for the additional duties. *Id.* ¶¶ 31, 35, 37–38, 40, 45, 47–49. Plaintiff also alleges that on November 4, 2021, Mr. Neal requested additional compensation for Plaintiff due to the increased responsibilities. *Id.* ¶ 56. However, Chief Judge Currie allegedly refused to approve any salary increase, "citing[] a lack of funding." *Id.* ¶ 59. Plaintiff claims that the hostile work environment continued through and after December 2021. *See id.* ¶¶ 62–75. According to Plaintiff, Chief Judge Currie "stopped talking to [Plaintiff] altogether, on or around mid-December 2021." *Id.* ¶ 63.

In March 2022, the Mayor's Office of Legal Counsel (MOLC)—which handles interagency legal issues and personnel matters for legal staff—allegedly arranged a meeting with Plaintiff to "investigate third-party reports regarding [Chief Judge] Currie's behavior." *Id.* ¶¶ 81, 86. During this meeting, Plaintiff claims she complained about Chief Judge Currie's "discriminatory and racist behavior," but the "MOLC did not follow up with any action." *Id.* ¶¶ 81–82. In July 2022, after Neal departed OAH, Plaintiff allegedly requested a meeting with members of the MOLC and complained again about "the hostile work environment, discrimination, and retaliation" she experienced at OAH while working for Chief Judge Currie. *Id.* ¶ 86. Plaintiff claims her complaints were again ignored by the MOLC. *See id.* She does not allege that Chief Judge Currie had knowledge of these complaints.

Plaintiff alleges that, on August 1, 2022, Chief Judge Currie offered the position of Interim General Counsel to Plaintiff until a replacement could be hired. *Id.* ¶¶ 87–88. Chief Judge Currie "continued to be abrasive and dismissive" to Plaintiff during this meeting and informed Plaintiff she would not receive a salary increase if she accepted the interim role. *See id.* The next day, Plaintiff declined the offer to serve as Interim General Counsel. *Id.* ¶ 90. On August 3, 2022, Plaintiff again contacted the MOLC "to request an investigation into [Chief

Jude] Currie's hostile work environment." *Id*. ¶ 91.   Plaintiff claims that on August 5, 2023, the

MOLC placed her on administrative leave.   *Id*. ¶ 92.   An investigation ensued, conducted by the

D.C. Department of Forensic Sciences (DFS), as assigned by the MOLC, and DFS found

Plaintiff's claims unsubstantiated.   *Id*. ¶ 93.   Plaintiff resigned from OAH on February 28, 2023.

*Id*. ¶ 94.

## STANDARD OF REVIEW

Motions to dismiss brought under Fed. R. Civ. P. 12(b)(6) test the legal sufficiency of a

complaint.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).   For a complaint to survive

a motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the

speculative level, on the assumption that all the allegations in the complaint are true (even if

doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007); *see also Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Twombly*, 550 U.S. at

570)).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."  *Id*.  In other words, while a court must generally consider a

plaintiff's factual allegations as true, it is not obligated to draw inferences in favor of the plaintiff

"if such inferences are unsupported by the facts set out in the complaint."  *Kowal v. MCI

Commc'ns Corp*., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## ARGUMENT

I.     **To the Extent that Plaintiff Improperly Repleads Title VII Clams Against Chief
       Judge Currie, in Contravention of the Court's June 5, 2025 Order, Those Claims
       Should Be Stricken or Dismissed With Prejudice (Counts I, III, V, VI).**

Following the Court's motion hearing on Defendants' motion to dismiss the original

complaint, the Court entered an order granting Plaintiff leave to amend her complaint but barring

her from re-pleading any Title VII claims against Chief Judge Currie.  *See* June 5, 2025 Minute

Order; *see also* Mem. of Pts. & Authorities in Supp. Defs.' Mot. to Dismiss Pl.'s Compl. at 7–8,

ECF No. 16-1.  Despite the Court's clear instruction as to Title VII claims against Chief Judge

Currie, the Amended Complaint inexplicably does not specify against which defendant each

claim is brought and does not make plain that it does not assert any Title VII claim against Chief

Judge Currie.  *See* Am. Compl. ¶¶ 95–106 (Count I), ¶¶ 112–16 (Count III), ¶¶ 122–25 (Count

V) & ¶¶ 126–31 (Count VI).  Thus, it is unclear whether the claims have been improperly

reasserted.  As the Court precluded Plaintiff leave to re-plead these claims, to the extent they

inexplicably are contained in the Amended Complaint, the Court should strike them from the

Amended Complaint or dismiss them with prejudice.  *See, e.g.*, *Doe #1 v. Am. Fed'n of Gov't*

*Emps.*, No. 20-CV-1558, 2023 WL 22059, at *5 (D.D.C. Jan. 3, 2023); *Hilliard v. Int'l City/Cnty.*

*Mgmt. Ass'n-Ret. Corp.*, 898 F. Supp. 2d 84, 88 (D.D.C. 2012) ("A court may strike claims that

attempt to circumvent earlier decisions by that court denying such claims.").

## II.    Plaintiff Fails to State a Hostile Work Environment Claim Under Title VII or the DCHRA (Counts I, II, III, and IV).

### A.    Legal Standard

Under Title VII and the DCHRA, a work environment becomes actionably hostile "when

. . . permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or

pervasive to alter the conditions of the victim's employment and create an abusive working

environment."  *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993) (citation and internal

quotation marks omitted) (Title VII); *see also Bereston v. UHS of Del., Inc.*, 180 A.3d 95, 113

(D.C. 2018) (DCHRA).[1]  Because the antidiscrimination statutes are "not a 'general civility

---

[1]    Although the D.C. Council amended the DCHRA to indicate that harassment need not necessarily be severe or pervasive to be actionable, the amendments did not take effect until October 2022.  Accordingly, the traditional "severe or pervasive" standard applies to cases, such as this one, where the alleged hostile work environment predated the statutory amendment.  *See, e.g.*, *Diggs II v. D.C. Office of Hum. Res.*, 2023-CAB-004848, slip op. at 4 n.1 (D.C. Super. Ct.

code,'" "[t]he challenged 'conduct must be *extreme* to amount to a change in the terms and conditions of employment.'"  *McCain v. Bazron*, No. 20-CV-03332 (ACR), 2023 WL 3790686, at *3 (D.D.C. June 2, 2023) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Determining whether a work environment is sufficiently hostile "requires examination of the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *Id.* (quoting *Harris*, 510 U.S. at 23).  "'Simple teasing, offhand comments, isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"  *Thomas v. Securiguard Inc.*, 412 F. Supp. 3d 62, 92 (D.D.C. 2019) (quoting *Faragher*, 524 U.S. at 788); *see also, e.g.*, *McCain*, 2023 WL 3790686, at *3 ("Employers are not liable for 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" (quoting *Faragher*, 524 U.S. at 788)).

### B.    Plaintiff Does Not Plausibly Allege a Hostile Work Environment Based on Race and Sex Because She Offers No Facts Sufficient to Show that Chief Judge Currie Held Animus Against Black Women (Counts I & II).

In Counts I and II, Plaintiff alleges that she was subject to a hostile work environment in violation of Title VII and the DCHRA because she is a Black woman.  *See* Am. Compl. ¶¶ 85–106 (Title VII); *id.* ¶¶ 107–11 (DCHRA).  Plaintiff alleges that the alleged hostile work environment "arose from [Chief Judge] Currie's initial in-office conversation with [Plaintiff], when [Chief Judge] Currie expressed her disdain toward Black and Black women employees."  *Id.* ¶ 101.  Thus, Plaintiff's claim that Chief Judge Currie holds discriminatory animus toward

---

Oct. 24, 2024) (holding that the D.C. Human Rights Enhancement Amendment Act of 2022 does not retroactively apply to conduct pre-dating its passage).

Black women and created a hostile work environment for Plaintiff based on that supposed race- and sex-based animus is entirely predicated on the single June 2021 meeting between Chief Judge Currie and Plaintiff.  Yet Chief Judge Currie's alleged comments were facially neutral. Plaintiff perceived them to be racially and sexually biased because Chief Judge Currie "only described Black paralegal and legal support staff in a derogatory manner"; used certain "derogatory descriptors for black woman," such as "fast," "sneaky," and "full of attitude"; and complimented Plaintiff for being "articulate" and "well spoken."  *Id.* ¶¶ 22, 23–24, 27–28.

Plaintiff offers only her own rank speculation that Defendant Currie's isolated comments in this single conversation demonstrate animosity towards Black women.  This does not suffice. *See, e.g.*, *Robinson v. Red Coats*, Inc., 31 F. Supp. 3d 201, 213 (D.D.C. 2014) ("[P]laintiff's speculation that . . . statements had racial connotations cannot sustain her race discrimination claim.").  It is well settled that "repeated boilerplate allegations that [defendant's] conduct was motivated by discriminatory animus is not sufficient to state a cause of action under Title VII." *DeLaurencio v. Brooklyn Children's Ctr.*, 111 F. Supp. 3d 239, 250 (E.D.N.Y. 2015). Where a plaintiff "offers, at best, only conclusory and speculative allegations regarding Defendants' motive," dismissal is warranted. *Williams v. Wellness Med. Care, P.C.*, No. 11-CV-5566, 2013 WL 5420985, at *6 (S.D.N.Y. Sept. 27, 2013).  A plaintiff must plausibly allege not merely that she was subject to severe or pervasive harassment, but also that the hostile work environment was because of discriminatory animus.  *See Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) ("In this case, none of the comments or actions directed at Baloch *expressly* focused on his race, religion, age, or disability—unlike in some hostile work environment cases.") (emphasis added).  As another member of this Court has observed:

> Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude.

> It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage of correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals.

*Bryant v. Brownlee*, 265 F. Supp. 2d 52, 63 (D.D.C. 2003) (quoting *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002)). Here, Plaintiff fails to allege facts that plausibly show any animus against Black women by Chief Judge Currie that is linked to the allegedly hostile work environment Plaintiff experienced. Therefore, Counts I and II should be dismissed.

### C. Plaintiff Fails to Plausibly Allege That She Was Subject to Severe or Pervasive Harassment.

Plaintiff's hostile work environment claims, regardless of the theory on which they are based—race and sex discrimination, or retaliation—fail because Chief Judge Currie's alleged treatment of Plaintiff does not constitute a continuous course of severe or pervasive harassment.[2] "[C]onduct must be extreme to amount to a change in the terms and conditions of employment." *Rosenson v. Bloomfield*, No. 24-CV-1365, 2025 WL 958254, at *3 (D.D.C. Mar. 31, 2025) (quoting *George*, 407 F.3d at 416).

Here, Plaintiff bases her retaliatory hostile work environment claim on a variety of alleged workplace actions by Chief Judge Currie: (1) "ceasing communication with [Plaintiff]"; (2) "isolating her from colleagues by instructing them not to speak with her"; (3) "unjustly accusing her of insubordination despite corrections from colleagues"; (4) "withholding training opportunities"; (5) "reallocating her job responsibilities"; (6) "failing to provide compensation commensurate with similarly situated deputy general counsels across the DC government"; and (7) "offering her an interim General Counsel position without equal pay to the previous male

---

[2]    Courts in [this] circuit typically apply the same legal standard as that used in the discriminatory harassment context to determine whether retaliatory harassment is actionable." *Bergbauer v. Mabus*, 934 F. Supp. 2d 55, 81 (D.D.C. 2013).

General Counsel." Am. Compl. ¶ 100.  None of these actions, either individually nor collectively, rise to the level of actionable severe or pervasive harassment.

To start, "[a] litany of cases shows that simply having a rude, harsh, or unfair boss is not enough for a hostile work environment claim." *Dudley v. Wash. Metro. Area Transit Auth.*, 924 F. Supp. 2d 141, 172 (D.D.C. 2013).  For instance, it is well established that, even when "pervasive and continuous," a supervisor's "shunning and humiliation" of an employee is typically insufficient to support a hostile work environment claim.  *Clemmons v. Acad. for Educ. Dev.*, 107 F. Supp. 3d 100, 120 n.6 (D.D.C. 2015) (quoting *Bergin v. N. Clackamas Sch. Dist.*, No. 03-CV-1412, 2005 WL 66069, at * 19 (D. Or. Jan 12, 2005)); *Bryant*, 265 F. Supp. 2d at70 ("[N]umerous courts have held that shunning or ostracism by co-workers and supervisors is insufficient to sustain a retaliation claim."); *Boone v. MountainMade Found.*, 64 F. Supp. 3d 216, 243 (D.D.C. 2014) ("[S]hunning by a supervisor is not enough to demonstrate a hostile work environment . . . ."); *Phillips v. Rubenstein*, No. 05-CV-00862, 2007 WL 9760157, at *10 (D.D.C. Oct. 29, 2007) (citing cases).

Plaintiff's allegations of isolation from colleagues, reassignment of duties, and withholding of training opportunities similarly are non-actionable "ordinary tribulations of the workplace."  Faragher, 524 U.S. at 788.  "Indeed, courts have generally rejected hostile work environment claims that are based on work-related actions by supervisors."  *McClure v. Blinken*, No. 22-cv-624 (ACR), slip op. at 11 (D.D.C. July 13, 2023), ECF No. 21 (internal quotation marks omitted).  For instance, "this court has held . . . that exclusion from the informal chain of command, close monitoring of work, missed opportunities for teaching, travel, and high-profile assignments, and reassignment to another unit did not amount to a hostile work environment

because 'they cannot fairly be labeled abusive or offensive.'" *Id.* at 11–12 (quoting *Bell v. Gonzales,* 398 F. Supp. 2d 78, 92 (D.D.C. 2005)).

Although a hostile work environment is necessarily "composed of a series of separate acts," *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002), the underlying actions must be "similar in nature, frequency, and severity" to be considered "part and parcel" of a coherent work environment claim. *Baird v. Gotbaum*, 662 F.3d 1246, 1251 (D.C. Cir. 2011). "[C]obbling together a number of distinct, disparate acts will not create a hostile work environment." *Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 82 (D.D.C. 2007). Thus, "[w]here, as here, a plaintiff adopts a 'kitchen sink' approach to crafting a hostile work environment claim, the Court can only conclude that these acts are so different in kind and remote in time from one another that they cannot possibly comprise part of the same hostile work environment." *Faison v. Vance Cooks*, 896 F. Supp. 2d 37, 65–66 (D.D.C. 2012). Plaintiff fails to plausibly allege that she was subject to a single course of conduct that was sufficiently severe or pervasive to alter the conditions of her employment. Therefore, the Court should dismiss with prejudice Plaintiff's hostile work environment claims in Counts I, II, III and IV.

Lastly, the isolated comments alleged do not of themselves rise to the level of severe and pervasive conduct that is actionable. *See* Am. Compl. ¶¶ 98–99 (asserting race- and sex-based hostile work environment claim based on Chief Judge Currie's allegedly biased remarks about Black women). "[C]ases in which a single incident can create a hostile work environment are rare," *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 579 (D.C. Cir. 2013) (Kavanaugh, J., concurring), and "[e]xcept in extreme circumstances, courts have refused to hold that one incident is so severe to constitute a hostile work environment," *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002). Indeed, "[e]ven when . . . 'isolated incidents' involve 'offensive

language'—or 'even ethnic or racial slurs'—they seldom clear the high bar for hostile work environment liability."  *Latture v. Priority Life Care, LLC*, No. 23-CV-1364, 2025 WL 947476, at *10 (D.D.C. Mar. 28, 2025) (quoting *Nagi v. Chao*, No. 16-CV-2152, 2018 WL 4680272, at *1 (D.D.C. Sept. 28, 2018) (Jackson, J.)).  Courts routinely dismiss claims involving significantly more severe and pervasive conduct than that alleged here.  *See George*, 407 F.3d at 416–17 (no hostile work environment when employee was repeatedly told to "go back where she came from"); *Latture*, 2025 WL 947476, at *11 (ethnic slurs, such as calling woman an "ignorant black bitch" and referring to "ghetto blacks and hood rats," was not severe or pervasive harassment*)*; *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1107 (9th Cir. 2000) (dismissing claim where supervisor called female employees "castrating bitches," "histrionics," "Madonnas," or "Regina" several times in plaintiff's presence and called plaintiff "Medea"); *Tolson v. Springer*, 618 F. Supp. 2d 14, 21–22 (D.D.C. 2009) (dismissing claim where plaintiff was called "bitch" and "redbone" and told "the Union was not a place for black women").  What is more, three isolated incidents over the course of half of a year—none of which involved severe harassment—is not considered pervasive.  *See* Am. Compl. ¶¶ 70, 74, 75; *Akosile v. Armed Forces Ret. Home*, 141 F. Supp. 3d 75, 97 (D.D.C. 2015) ("[T]hree isolated incidents over the course of three months can hardly be characterized as 'pervasive'"); *Stewart*, 275 F.3d at 1134; *Ramey v. Potomac Elec. Power Co.*, 468 F. Supp. 2d 51, 58 (D.D.C. 2006) ("[T]he isolated comments and incidents attributed to the defendants do not demonstrate as a matter of law that defendants' conduct was sufficiently severe or pervasive to sustain a hostile work environment claim.").

Accordingly, Plaintiff's hostile work environment claims in Counts I, II, III, and IV should be dismissed with prejudice.

**III.    Plaintiff Fails to State Retaliation Claims Under Title VII or the DCHRA (Counts III & IV).**

In Counts III and IV, Plaintiff brings retaliation claims under Title VII and DCHRA.  *See* Am. Compl. ¶¶ 112–16 (Title VII); *id.* ¶¶ 117–21 (DCHRA).  Title VII bars retaliation against an employee who has opposed an employment practice made unlawful under the statute.  42 U.S.C. § 2000e–3(a).  To state a retaliation claim, a plaintiff must allege that: (1) the employee engaged in a protected activity; (2) the employer took action that was materially adverse or created a severe or pervasive hostile work environment; and (3) a causal link existed between the two. *Spence v. U.S. Dep't of Veterans Affs.*, 109 F.4th 531, 539 (D.C. Cir. 2024) (quoting *Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Emps. of the Libr. of Cong., Inc. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013)).  "The standard for a prima facie case of retaliation under the DCHRA mirrors the standard under Title VII."  *Bowie v. Gonzales*, 433 F. Supp. 2d 24, 34 (D.D.C. 2006), *aff'd in part sub nom. Bowie v. Maddox*, 642 F.3d 1122 (D.C. Cir. 2011).

Here, Plaintiff claims she was subject to retaliation after opposing Chief Judge Currie's June 2021 comments.  *See* Am. Compl. ¶¶ 113, 119.  Plaintiff alleges four discrete retaliatory acts.  These are: (1) Chief Judge Currie's assignment of HR duties to Plaintiff after opposing Currie's conduct in June 2021, *id.* ¶¶ 115, 119; (2) Currie's assignment of operational duties to Plaintiff after opposing Currie's conduct in June 2021, *id.*; (3) Currie's refusal to offer Plaintiff a higher salary for the position of Interim General Counsel, *id.* ¶ 120; and (4) the MOLC's decision to place Plaintiff on paid administrative leave after she complained to the MOLC in August 2022, *id.* ¶¶ 114, 118.  Plaintiff fails to plausibly state a retaliation claim for any of these alleged discrete acts.

**A.** <u>**Plaintiff Fails to Plausibly Allege That Her Oppositional Activity in June 2021 Was Statutorily Protected.**</u>

First, Plaintiff does not plausibly allege that she engaged in protected activity in June 2021. "An activity is protected if it involves opposing alleged discriminatory treatment by the employer or participating in legal efforts against the alleged treatment." *Globus v. Skinner*, 721 F. Supp. 329, 334 (D.D.C. 1989). But "[n]ot every complaint garners its author protection under Title VII." *Broderick v. Donaldson*, 37 F.3d 1226, 1232 (D.D.C. 2006). Rather, opposition activity must pertain "to a practice that the employee reasonably and in good faith believed was unlawful under the statute." *McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012). "The objective reasonableness of an employee's belief that her employer has engaged in an unlawful employment practice must be measured against existing substantive law." *Grosdidier v. Chairman, Broad. Bd. of Governors*, 774 F. Supp. 2d 76, 120 (D.D.C. 2011) (internal quotation marks omitted), *aff'd in part*, 709 F.3d 19 (D.C. Cir. 2013).

For the same reasons that the Chief Judge's alleged remarks at the June 2021 meeting do not constitute an unlawful hostile work environment, Plaintiff could not reasonably have thought that she was opposing unlawful discrimination at the time that she opposed and complained about Chief Judge Currie's behavior during this conversation. Courts routinely hold that complaints about isolated incidents of allegedly discriminatory conduct are unprotected. *See George v. Leavitt*, 407 F.3d 405, 408 (D.C. Cir. 2005) (affirming dismissal of retaliation claim because plaintiff's complaints—about "insulting and demeaning statements," including telling her to "go back to Trinidad"—were "isolated incidents" that "could not reasonably be thought to constitute . . . . [a] violation of Title VII"); *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (per curiam) (holding that "[n]o reasonable person could have believed that the single incident [at issue] . . . violated Title VII's standard"); *Valles-Hall v. Ctr. for Nonprofit*

*Advancement*, 481 F. Supp. 2d 118, 154 n.23 (D.D.C. 2007) (holding that plaintiff's complaints about "racially offensive behavior" were not protected because plaintiff "could not reasonably believe that stray remarks or isolated actions" were unlawful); *Savignac v. Day*, 754 F. Supp. 3d 135, 196 (D.D.C. 2024) ("[C]ourts routinely find that plaintiffs who experience only isolated incidents of harassment but nevertheless accuse their employer of sexual harassment have not engaged in protected, oppositional activity . . . ."), *adhered to as amended*, 763 F. Supp. 3d 17 (D.D.C. 2025).

So too here. Accordingly, the Court should dismiss all of Plaintiff's retaliation claims in Counts III and IV with prejudice to the extent that they are based on Plaintiff's alleged oppositional activity in June 2021, including her retaliatory hostile work environment claim and her claims based on the reassignment of duties and the salary offer she received for the Interim General Counsel position.

**B.**     <u>**Plaintiff Fails to Plausibly Allege that the Reassignment of Duties or Placement on Paid Administrative Leave Are Materially Adverse Acts.**</u>

Even if Plaintiff's opposition to Chief Judge Currie's remarks in June 2021 were legally protected, Plaintiff's claims for discrete acts of retaliation nonetheless fail because she does not allege that her engagement in either that or later oppositional activity caused her to be subject to any materially adverse action. As the Supreme Court held in *Burlington Northern & Santa Fe Railroad. Co. v. White*, 548 U.S. 53, 67 (2006), "[t]he antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Accordingly, "only a retaliatory act that is 'materially adverse' to the plaintiff is actionable,"

*Chambers v. District of Columbia*, 35 F.4th 870, 876 (D.C. Cir. 2022) (*en banc*), meaning that "it [must] cause[] 'significant' harm," *Muldrow v. City of St. Louis*, 601 U.S. 346, 357 (2024).[3]

Under this standard, neither the reassignment of duties nor the placement of an employee on paid administrative leave, without more, is a materially adverse act that can give rise to an actionable claim of retaliation. "[C]hanges in assignments or work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes." *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1557 (D.C. Cir. 1997); *see also Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002) ("Purely subjective injuries, such as dissatisfaction with a reassignment" is not an adverse action.); *Moss v. Hayden*, No. 18-CV-470, 2020 WL 4001467, at *7 (D.D.C. July 15, 2020) (holding that assignment of "tremendous amount of additional work" did not "constitute an adverse employment action" (internal quotation marks omitted)). Here, Plaintiff does not allege a corresponding increase in hours or decrease in salary that accompanied her reassignment of HR or operational duties. Accordingly, the Court should dismiss these claims in Counts III and IV with prejudice.

Second, while the D.C. Circuit has expressly left open the question of whether placement on paid administrative leave is materially adverse for purposes of a retaliation claim, *see Hornsby v. Watt*, No. 17-5001, 2017 WL 11687516, at *1 (D.C. Cir. Nov. 14, 2017), there is near consensus in the district courts that paid administrative leave pending an investigation, as Plaintiff alleges here, does *not* constitute a materially adverse action. *See, e.g.*, *Hockaday v. Wash. Metro. Area Transit Auth.*, No. 21-CV-03265, 2023 WL 3844388, at *8 (D.D.C. June 6,

---

[3]     This is true even after the D.C. Circuit's decision in *Chambers v. District of Columbia*, 35 F.4th 870 (D.C. Cir. 2022) (*en banc*), and the Supreme Court's decision in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), which loosened the standard only with respect to Title VII's anti-discrimination provision and not its retaliation provision.

2023) ("Several judges in this district have held that 'placing an employee on paid administrative leave does not, in and of itself, constitute an adverse employment action.'" (quoting *Hornsby v. Watt*, 217 F. Supp. 3d 58, 65 (D.D.C. 2016) and collecting cases)); *Reid v. Buttigieg*, No. 20-CV-1262, 2023 WL 2184549, at *12 (D.D.C. Feb. 23, 2023); *Webster v. Spencer*, No. 17-CV-1472, 2020 WL 2104231, at *9 (D.D.C. May 1, 2020) ("[P]lacing an employee on paid administrative leave does not, in and of itself, constitute a materially adverse action for purposes of a retaliation claim."), *aff'd sub nom. Webster v. Braithwaite*, No. 20-5187, 2020 WL 10056382 (D.C. Cir. Nov. 20, 2020); *Jones v. Castro*, 168 F. Supp. 3d 169, 179 (D.D.C. 2016) ("[P]lacement on paid administrative leave does not itself constitute an adverse action under . . . the retaliation standard.").

C.   **Plaintiff Fails to Plausibly Allege a Causal Connection Between Her June 2021 Complaints and the Interim General Counsel Salary Offer.**

Finally, Plaintiff fails to plausibly allege that either the reassignment of HR and operational duties or the failure to offer her a higher salary for the position of Interim General Counsel were causally connected to her oppositional activity in June 2021.

Where, as here, there are no facts that could provide direct evidence of retaliation, a plaintiff typically must rely on allegations of temporal proximity between the protected activity and adverse action to establish the requisite causal connection. *Johnson v. DeJoy*, No. 23-CV-2342, 2024 WL 4215557, at *8 (D.D.C. Sept. 17, 2024). For the causation element to be satisfied through temporal proximity alone, however, the proximity must be "very close." *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007). Courts have held that even a two-month gap may be insufficient to infer a causal connection. *See, e.g.*, *Baker v. Potter*, 294 F. Supp. 2d 33, 41 (D.D.C. 2003) ("[T]he two-month gap is not sufficient to establish the temporal proximity necessary to show a causal connection."); *Taylor v. Solis*, 571 F.3d 1313, 1322 (D.C. Cir. 2009)

(rejecting as "untenable" an inference of causation based on a gap of "two and one-half months").  Finally, "obvious alternative explanations" for a defendant's actions may negate a plaintiff's theory of causation based on temporal proximity alone.  *See Iqbal*, 556 U.S. at 682 (explaining that plaintiffs' inference of discriminatory intent was not plausible when an "obvious alternative explanation" existed (quoting *Twombly*, 550 U.S. at 567)).

First, because Plaintiff fails to allege specific dates when she was assigned HR and operational duties, the Court cannot infer causation from temporal proximity alone.  *See Johnson*, 2024 WL 4215557, at *8 ("When the chief evidence relied upon by the plaintiff to establish the causal connection is the temporal proximity, courts have, at a minimum, required the plaintiff to plead specific dates of the protected activity and the adverse action." (quoting *Pierre v. Woods Servs., Inc.*, No. 20-CV-5881, 2021 WL 84068, at *5 (E.D. Pa. Jan. 11, 2021))); *id.* ("Without knowing the precise dates," the "Court cannot possibly make 'an inference of causation' necessary to sustain [the Plaintiff's] claim." (quoting *Spence v. U.S. Dep't of Veterans Affs.*, No. 19-CV-1947, 2022 WL 3354726, at *9 (D.D.C. Aug. 12, 2022), *aff'd*, 109 F.4th 531 (D.C. Cir. 2024))); *Glenn v. Williams*, No. 98-CV-1278, 2006 WL 401816, at *26 (D.D.C. Feb. 21, 2006) (dismissing retaliation claim where the plaintiff "provide[d] the Court with no concrete dates upon which any of the alleged retaliatory actions occurred"), *aff'd sub nom. Dickens v. Dep't of Consumer & Regul. Affs.*, 298 F. App'x 2 (D.C. Cir. 2008).

Moreover, any inference that can be inferred from timing is negated by the fact that obvious alternative explanations for the reassignments are apparent from the face of Plaintiff's pleading.  Indeed, Plaintiff alleges that the reason that these duties were reassigned is because the employees performing them resigned, requiring the duties to be reassigned.  *See* Am. Compl. ¶¶ 47–48 ("In the late summer of 2021, Mia Brown, OAH's human resources representative

resigned.  Thereafter, Ms. Currie told Mr. Neal to assign Ms. Jennings human resources-related (HR) duties."); *id.* ¶ 49 ("Ms. Currie also assigned Ms. Jennings duties that fell under the Operational Department, after the COO left the agency.").  Because Defendants' acts are explained by non-retaliatory reasons according to Plaintiff's *own* allegations, Plaintiff's complaints about Chief Judge Currie's remarks cannot be the "but for" cause of the reassignments as a matter of law.

Finally, although withholding a pay increase can sometimes be a materially adverse action, Plaintiff has similarly failed to allege facts from which the Court could infer any causal connection between Defendant Currie's refusal to offer Plaintiff a higher salary for the Interim General Counsel position in or around August 1, 2022, Am. Compl. ¶¶ 87–88, and any of Plaintiff's alleged protected activity 14 months prior.  Plaintiff alleges that Currie refused to increase her salary when offering her the Interim General Counsel position on August 1, 2022, which was well over a year after Plaintiff opposed and complained about Currie's alleged offensive remarks.  This act is therefore too far removed from the allegedly protected activity to infer a causal connection between the two.  *See Clark*, 532 U.S. at 273; *see also, e.g.*, *Taylor*, 71 F.3d at 1322 (rejecting interval of two and a half months between protected activity and adverse action as insufficient, without more, to establish causation for retaliation claim).  Accordingly, the Court should dismiss Plaintiff's retaliation claims in Counts III and IV based on these discrete acts with prejudice.

## IV.  Plaintiff Fails to State Race and Sex Discrimination Claims Based on Unequal Pay Under the DCHRA or Title VII (Counts V & VI).

Plaintiff brings claims for unequal pay under Title VII and the DCHRA based on race and sex discrimination.  *See* Am. Compl. ¶¶ 122–31 (Counts V & VI).  First, in Count V, Plaintiff alleges that Defendants "compensat[ed] her less than similarly situated deputy general counsels

in the DC government who were not black women." *Id.* ¶ 122.  Then, in Count VI, Plaintiff alleges that when Chief Judge Currie "sought for [Plaintiff] to assume the role of interim attorney general [sic],"[4] Plaintiff was not offered the same salary as the departing General Counsel, a "similarly situated man." *Id.* ¶¶ 127–28.

"Claims of unequal pay under the DCHRA are governed by the standards of the Equal Pay Act." *George Wash. Univ. v. Violand*, 940 A.2d 965, 979 (D.C. 2009).  Specifically, a plaintiff must allege that "she was doing substantially equal work on the job, the performance of which required substantially equal skill, effort, and responsibility as the jobs held by members of the opposite sex; (2) the job was performed under similar working conditions; and (3) she was paid at a lower wage than those members of the opposite sf *Newman v. Amazon.com, Inc.*, No. 21-CV-531, 2022 WL 971297, at *6 (D.D.C. Mar. 31, 2022).  To state an unequal pay claim under Title VII, a plaintiff must allege: (1) that she faced differential treatment; (2) from her employer; (3) with respect to her compensation; (4) because of her race or sex, or because of another protected characteristic." *Moore-Davis v. U.S. Dep't. of the Navy*, No. 21-CV-3402, 2023 WL 6276637, at *3 (D.D.C. Sept. 26, 2023).

Although the DCHRA and Title VII's legal standards differ somewhat, both statutes require a plaintiff to plausibly allege that she performed substantially equal work to alleged comparators.  *See Newman*, 2022 WL 971297, at *6 ("[T]o state a prima facie case of wage discrimination under Title VII, Newman must allege that she is a member of a protected class, and that she performed work substantially equal to that of employees who were not members of that class and were compensated at higher rates." (internal quotation marks omitted)); *Johnson v.*

---

[4]    Defendants presume "interim attorney general" is a typographical error, and Plaintiff means to refer to the position of "interim general counsel."

*Wash. Metro. Area Transit Auth.*, No. 19-CV-3534, 2022 WL 4547527, at *6 (D.D.C. Sept. 29, 2022) ("As with the Equal Pay Act, to allege wage discrimination under Title VII, a plaintiff must show that she performed work 'substantially equal' to that of a comparator (along with proving other prima facie elements)."), *aff'd*, No. 22-7149, 2023 WL 2442222 (D.C. Cir. Mar. 6, 2023).  In doing so, a plaintiff may not rely merely on job titles, but rather "must allege facts that meaningfully define the job at issue in terms of the actual requirements of the job or functions performed by those employed in that role."  *Savignac v. Day*, 539 F. Supp. 3d 107, 117 (D.D.C. 2021) (internal quotation marks omitted) (cleaned up).

Plaintiff fails to meet this pleading requirement.  First, although Plaintiff alleges in Count V that she was paid less than deputy general counsels in other District agencies who were not Black women, she fails to identify any of these individuals or plead nonconclusory facts from which the Court could infer that these employees performed work substantially equivalent to Plaintiff's.  *See Savignac*, 539 F. Supp. 3d at 117 (allegations that plaintiff was paid less than the male "associates with the same level of seniority in Jones Day's Issues & Appeals group" in the D.C. office were insufficient), *on reconsideration in part* 539 F. Supp. 3d 107 (D.D.C. 2021); *see also E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 258 (2d Cir. 2014) ("[T]he EEOC has not alleged a single nonconclusory fact supporting its assertion that the claimants' and comparators' jobs required "substantially equal" skill and effort"),  Absent such allegations, these claims must fail because "it is job content rather than descriptions or titles given by an employer which is the controlling factor in determining whether an equal pay violation exists."  *Hardy v. Sullivan*, 889 F.2d 291 (D.C. Cir. 1989); *see also e.g.*, *Turner v. District of Columbia*, 383 F. Supp. 2d 157, 179 (D.D.C. 2005) (where the plaintiff and comparator "had different duties" but

"were employed under the [same] job title 'medial officer," the plaintiff could not make out "a *prima facie* case under the Equal Pay Act").

Next, while Plaintiff claims in Count VI that she was denied the salary of the outgoing General Counsel when offered the Interim General Counsel position, she concedes that the two roles came with different job responsibilities and working conditions. *See* Am. Compl. at 3 (alleging that "Ms. Currie conveyed that the [interim] General Counsel role would be a title-only position with no real authority, which departs from the conditions under the previous male who occupied the role"); *id.* ¶ 87 ("Ms. Currie told Ms. Jennings that the interim position would be purely a title with no actual authority, and that all legal department matters would require her approval").

It is well settled that a comparator's job is not substantially equal where, as here, they have "additional and different duties." *Johnson v. District of Columbia*, 947 F. Supp. 2d 123, 131 (D.D.C. 2013). Therefore, it cannot be said that as outgoing General Counsel, Neal performed "substantially equal work" to what Plaintiff would have performed as Interim General Counsel. *See, e.g.*, *Johnson*, 2022 WL 4547527, at *4 (that a comparator's "job require[d] an important responsibility that [plaintiff's] d[id] not doom[ed] her prima facie case"), *aff'd*, No. 22-7149, 2023 WL 2442222 (D.C. Cir. Mar. 6, 2023); *Goodrich v. Int'l Bhd. of Elec. Workers, AFL-CIO*, 815 F.2d 1519, 1525 (D.C. Cir. 1987) (holding that positions were not substantially equal because comparators' additional duties were significant to employer's operation). This disparity defeats Plaintiff's equal pay claims under Title VII and the DCHRA. Accordingly, the Court should dismiss Counts V and VI with prejudice.

## CONCLUSION

For these reasons, the Court should grant Defendants' motion and dismiss the Amended Complaint with prejudice.

Dated: August 13, 2025                    Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Christina Okereke*
CHRISTINA OKEREKE [219272]
Chief, Civil Litigation Division Section II

*/s/ Danielle B. Rosenthal*
DANIELLE B. ROSENTHAL [1035562]
Assistant Attorney General
400 6th Street NW
Washington, D.C. 20001
(202) 285-0463
danielle.rosenthal@dc.gov

*Counsel for Defendants*

23

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TERRICA JENNINGS,<br><br>        *Plaintiff*,<br><br>    v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>        *Defendants*. | No. 1:24-CV-00329 (ACR) |

## <u>ORDER</u>

Upon consideration of Defendants' Motion to Dismiss the Amended Complaint, any opposition and reply thereto, and the entire record, it is this _____ day of _____ 2025, hereby

**ORDERED** that Defendants' Motion is **GRANTED**; it is further

**ORDERED** that the Amended Complaint is **DISMISSED WITH PREJUDICE**.

**SO ORDERED**.

                               _____

                               ANA C. REYES<br>
                               United States District Judge